## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**IN RE: Jack Ross and Shirline J. Coleman, Debtors**         **5:07-bk-71441**
                                                                 **Ch. 13**

## OPINION AND ORDER

The issue before the Court in this case is whether the above median income debtors may include in their chapter 13 Form B22C calculation (the chapter 13 means test) installment payments on a vehicle that they propose to surrender in their chapter 13 plan. By deducting the vehicle payment, the debtors end up with a negative monthly disposable income. If the payment expense is not included on Form B22C, the chapter 13 trustee calculates the debtors' monthly disposable income to be $550.92. The Court heard arguments on the trustee's objection to confirmation of the debtors' proposed plan on October 17, 2007, and gave all parties until December 14, 2007, to submit post-trial briefs. For the reasons stated below, the Court sustains the objection of the chapter 13 trustee.

### Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052, made applicable to these proceedings under Federal Rule of Bankruptcy Procedure 9014.

### Relevant Facts

Jack Ross Coleman and Shirline J. Coleman filed their joint petition for relief under chapter 13 and a proposed plan on May 11, 2007. The parties stipulated that the debtors have income above the median family income for the state of Arkansas. The debtors reported a net monthly income of $4210.33 on Schedule I, and monthly expenses totaling

$3570.58 on Schedule J of their petition, leaving an excess of $639.75 per month, which is the amount they proposed to pay into their chapter 13 plan for a period of 60 months. According to the Form B22C filed by the Colemans, they have a negative monthly disposable income of $22.32, as reported on line 58.  The Colemans' unsecured claims total $24,835.75, and they have proposed to pay approximately $6594.60 to their unsecured creditors under their plan

The chapter 13 trustee timely objected to the Colemans' plan on July 6, 2007.  According to the chapter 13 trustee, the Colemans have a monthly disposable income of $550.92, resulting in a total disposable income of $33,055.20 ($550.92 X 60 months), which should be paid to non-priority unsecured creditors.  The higher figure reported by the trustee is the result of the trustee not including on Form B22C the monthly vehicle payment of the vehicle the Colemans intend to surrender.

**Applicable Law**

According to the bankruptcy code, the court shall confirm a plan if the requirements of 11 U.S.C. § 1325(a) are met.  However, if the trustee objects to confirmation, as she has in this case, the court cannot confirm the plan unless the additional requirements of § 1325(b) are also met.  According to subsection (b), the plan must provide that all of the debtor's projected disposable income that will be received during the applicable commitment period be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b).[1]

---

[1]  11 U.S.C. § 1325(b)(1) states:
If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

2

This Court has already found that a debtor's projected disposable income is the disposable income that is calculated on Form B22C extrapolated over the applicable commitment period.  *In re Miller*, 5:06-bk-72691 (Jan. 29, 2008) (citing *Coop v. Frederickson* (*In re Frederickson*), 375 B.R. 829 (B.A.P. 8th Cir. 2007)).  At issue in this case is the determination of the debtors' disposable income; specifically, in the context of a chapter 13 plan, what are the amounts reasonably necessary to be expended for the debtors' maintenance or support that first become payable after the date the petition is filed.  Disposable income is defined in the code as the debtor's current monthly income "less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed." 11 U.S.C. § 1325(b)(2)(A)(i).[2]  This definition has three components relevant to this case: (1) current monthly income, (2) less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor, (3) that first becomes payable after the date the petition is filed.

The Court will examine each of these components in turn.  Current monthly income is defined as "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A).  In other words, debtors are required to figure their disposable income by averaging their monthly income for the six months *preceding* the filing of their bankruptcy petition.  There is no dispute in this case regarding the debtors' current monthly income.

---

[2]  This language is similar to another code provision relating to confirmation.  In the context of a chapter 13 case, a plan cannot be confirmed unless "the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition . . . ." 11 U.S.C. § 1325(a)(8).  Section 1325(b)(2)(A)(i) *almost* mirrors the confirmation requirement of (a)(8) but for the comma after "obligation" and before "that."  As discussed below, by adding that comma, Congress appears to have made clear its determination that "amounts reasonably necessary to be expended" must be applicable in the context of the debtor's proposed plan, even if the "amounts expended" are determined in accordance with § 707(b)(2).

The second component--amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor--is also defined, in part.  The amount reasonably necessary for the debtor's maintenance and support is dependent upon the debtor's current monthly income.  If the debtor's current monthly income is equal to or below the median family income of the applicable state, the debtor would use Schedule J to determine which of the debtor's current expenses were reasonable.  If the debtor's current monthly income is greater than the median family income for the state, as is the case here, the debtor would look to § 707(b)(2)(A) and (B), which is incorporated in Form B22C, to determine which of the debtor's maintenance and support expenses are "amounts reasonably necessary to be expended."  11 U.S.C. § 1325(b)(3).[3]  Form B22C is often referred to as the chapter 13 means test.

It is important to recognize that the means test required by a chapter 7 debtor under § 707(b)(2)[4] and the means test required under § 1325(b)(3) are not the same even though they both encompass § 707(b)(2).  They serve different purposes.  The purpose of the means test that arises under § 707(b)(2) is to determine whether the granting of relief under chapter 7 would be considered an abuse of the provisions of that chapter.  11 U.S.C. § 707(b)(2)(A)(i); *In re Perfetto*, 361 B.R. 27, 29 (Bankr. D.R.I. 2007) (recognizing that the chapter 7 means test and chapter 13 means test are specific to each chapter and intended to serve different purposes).  The purpose of the means test under § 1325(b)(3), which incorporates § 707(b)(2), is to determine the debtor's disposable

---

[3]  11 U.S.C. § 1325(b)(3) states, in relevant part,
Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than . . . the median family income of the applicable State . . . ."

[4]  Federal [Interim] Rule of Bankruptcy Procedure 1007(b)(4) states:
Unless § 707(b)(2)(D) applies, an individual debtor in a chapter 7 case with primarily consumer debts shall file a statement of current monthly income prepared as prescribed by the appropriate Official Form, and, if the debtor has a current monthly income greater than the applicable median family income for the applicable state and household size, the calculations in accordance with § 707(b), prepared as prescribed by the appropriate Official Form.

income relative to the debtor's proposed chapter 13 plan.  *Perfetto*, 361 B.R. at 29.
Although the information required for the respective means tests is the same, the chapter
13 means test requires additional adjustments according to § 1325(b)(2)(A)(i);
specifically, that the "amounts reasonably necessary to be expended" (as determined by
§ 707(b)(2) and the chapter 13 means test) must reflect payments that first become
payable after the date the petition is filed, which is the third component.

The adjustments that are required under the chapter 13 means test relate to the secured
debts the debtor intends to keep and pay for under his proposed chapter 13 plan.  Section
707(b)(2)(A)(iii) states that the debtor's average monthly payments on account of
secured debts shall be calculated, in part, as "the total of all amounts scheduled as
contractually due to secured creditors in each month of the 60 months following the date
of the petition . . . ."  11 U.S.C. § 707(b)(2)(A)(iii)(I).  In a chapter 7 case, the inquiry
may well stop here.  If the secured debt was contractually due as of the date of the
petition, the debtor may be able to include it as an expense on the means test even though
he intends to surrender the collateral later.[5]  However, because it is a chapter 7 case, the
expense would be included only for the purpose of determining a presumption of abuse
under § 707(b).  For chapter 13 cases, § 1325(b)(2)(A) further refines the amounts
"reasonably necessary to be expended" to reflect only payments that first become payable
after the petition is filed to more accurately reflect the debtor's disposable income in
relation to a proposed plan.  *See Beskin v. McPherson* (*In re McPherson*), 350 B.R. 38,
45 (Bankr. W.D. Va. 2006) (stating that the "amounts" referred to in § 1325(b)(2) are
"amounts that a debtor will make in the future as provided in the debtor's plan"); *see also
In re Crittendon*, No. 06-10322 C-13G, 2006 WL 2547102, at *3 (Bankr. M.D.N.C. Sept.

---

[5]  For examples of chapter 7 cases in which the expenses were allowed even though the debtor
expressed an intention to surrender the property, see *Fokkena v. Hartwick*, 373 B.R. 645 (D. Minn. 2007);
*In re Maya*, 374 B.R. 750 (Bankr. S.D. Cal. 2007); *In re Nockerts*, 357 B.R. 497 (Bankr. E.D. Wis. 2006);
and *In re Walker*, No. 05-15010-WHD, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006).
        For examples of chapter 7 cases in which the expenses were not allowed, see *In re Ray*, 362 B.R.
680 (Bankr. D.S.C. 2007); *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006); and *In re Skaggs*, 349 B.R.
594 (Bankr. E.D. Mo. 2006).

1, 2006) (recognizing the timing of the application of § 707(b)(2) in chapter 7 is different than that in chapter 13; under § 1325(b)(1), the means test is considered "as of the effective date of the plan")  According to the *McPherson* court, payments the debtor does not propose to make, and is not required to make, under the debtor's plan cannot be reasonably necessary for the debtor's support.  *McPherson*, 350 B.R. at 45-46.

Under chapter 13, the debtor is required to file a plan.  11 U.S.C. § 1321.  According to the bankruptcy rules, the plan may be filed with the petition, or, if not filed with the petition, it shall be filed within 15 days after the date the petition was filed.  Fed. R. Bankr. P. 3015.  The debtor's plan typically sets forth the proposed monthly payment to the trustee, the length of the plan, and the proposed treatment of the claims of secured, priority, and unsecured creditors.  Among the options available to a debtor in relation to a secured creditor is the surrender of the collateral securing that creditor's claim.  11 U.S.C. § 1325(a)(5)(C).  If the plan is confirmed, "the provisions of [the] confirmed plan bind the debtor and each creditor . . . ."  11 U.S.C. § 1327(a).  In other words, the plan becomes the new contract between the debtor and his creditors.  If the debtor proposed to surrender the collateral in his proposed plan, payment will no longer be made on that particular debt,[6] and there would be "no amounts contractually due in the future based on that contract."  *McPherson*, 350 B.R. at 47 (recognizing that "contractually due" carries different meanings in a chapter 13 case as in a chapter 7 case).  Therefore, it is no longer a debt that first becomes payable after the date the petition [and plan] is filed.

Because of the additional adjustment to the chapter 13 means test required by § 1325(b)(2)(A), the Court finds it is not appropriate for a debtor to include on Form B22C payments to secured creditors for collateral the debtor intends to surrender.  In this case, the debtors expressed their intent to surrender one of their vehicles in their proposed plan and should not have included that debt as an amount reasonably necessary to be

---

[6]  Of course, with the understanding that the creditor may be entitled to file a claim as an unsecured creditor for any deficiency after the sale of the collateral and share in the debtor's projected disposable income available to unsecured creditors under the plan.

expended for the maintenance or support of the debtors that first becomes payable after the date the petition was filed.  Accordingly, the Court sustains the trustee's objection to confirmation of the debtors' plan and will allow the debtors 20 days from the entry of this order to amend their plan consistent with the Court's findings.

IT IS SO ORDERED.

February 26, 2008
_____          _____
DATE                                                       BEN T. BARRY
                                                                 UNITED STATES BANKRUPTCY JUDGE

cc:      Jack Martin and Emily J. Henson, attorneys for the debtors
           Joyce B. Babin, chapter 13 trustee
           Chuck Tucker, Ass't United States Trustee

                                                                                              EOD  2/26/2008
                                                                                              by L Schacherbauer

7